UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|                                    |   |                      |
|------------------------------------|---|----------------------|
| KELLEY REYNOLDS, et al.,           | : | NO. 1:05-CV-00359    |
|                                    | : |                      |
|     Plaintiffs, | : |                      |
|                                    | : |                      |
|     vs.        | : |                      |
|                                    | : | **OPINION AND ORDER** |
| EXTENDICARE HEALTH SERVICES,       | : |                      |
| INC., et al.,                      | : |                      |
|                                    | : |                      |
|     Defendants. | : |                      |
|                                    | : |                      |

This case is before the Court on two summary judgment motions, first: Defendants' Motion for Summary Judgment With Regard to the Complaint Filed by Plaintiff Kelley Reynolds (doc. 17), Plaintiff Kelley Reynolds' Brief in Opposition (doc. 22), and Defendants' Reply (doc. 35). Second, Defendants' Motion for Summary Judgment With Regard to the Complaint Filed by Plaintiff Linda Heine (doc. 16), Plaintiff Linda Heine's Brief in Opposition (doc. 21), and Defendants' Reply (doc. 36). For the reasons stated herein, the Court GRANTS Defendants' Motions for Summary Judgment (docs. 16, 17).

## I.  Background

Defendants Extendicare Health Services, Inc., and Milford Care LLC operate a healthcare facility in Milford, Ohio, called Arbors of Milford, that offers patients long-term care, assisted living, and rehabilitation services (doc. 17).

A. <u>Plaintiff Kelley Reynolds</u>

Plaintiff Kelley Reynolds ("Reynolds") began working for Defendants on June 12, 2003, as Assistant Director of Nursing (<u>Id</u>.). When she began working, Reynolds received a copy of the employee handbook, which stated that all employment was at-will, and nothing in the handbook was to be construed to be an employment contract or to create any contractual rights (<u>Id</u>.). Reynolds signed a document acknowledging that she had read the handbook (<u>Id</u>.). Plaintiff received additional documents in the course of her employment reiterating that neither the handbook nor any other materials constituted an employment contract (<u>Id</u>.).

Reynolds reported to the Director of Nursing and the facility's administrator, Jennifer Fehn[1] ("Fehn") (<u>Id</u>.). Reynolds received a written performance evaluation approximately three months after she began her employment with Defendants (<u>Id</u>.). According to Defendants, Reynolds was not happy with her evaluation and was aware that her supervisor, the Director of Nursing, who at such time was Norma Nagel, had a negative view of her performance (<u>Id</u>.). According to Reynolds, her first and only performance evaluation was positive and Fehn told Reynolds that she was performing fine (doc. 22). The performance evaluation included specific comments regarding areas in which Reynolds needed improvement, such as needing to think more as a manager, to accept

---

[1]Jennifer Fehn is now known as Jennifer Eiswerth.

2

direction, and to stop gossiping (doc. 17).

After the performance evaluation, Defendants state they provided Reynolds with a detailed job description in order to help her improve her performance (Id.). Additionally, Reynolds's supervisors state they attempted to assist her in improving her performance (Id.). In January 2004, Fehn states she asked Reynolds to write a list of goals as part of her ongoing effort to improve Reynolds's performance (Id.). In March 2004, Bonnie Jones ("Ms. Jones") replaced Norma Nagel as the Director of Nursing (Id.). According to Reynolds, Ms. Jones routinely praised Reynolds for her performance, and as of May 2004, her performance was acceptable (doc. 22). However, according to Defendants, Ms. Jones found many deficiencies in Reynolds's performance and discussed these problems with Fehn (doc. 17). Reynolds was never subjected to any disciplinary action due to her performance, but Fehn and Ms. Jones claimed that Reynolds consistently had problems with leadership and made inconsistent management decisions (Id.). As a result, Ms. Jones and Fehn decided to develop a thirty-day improvement plan and create list of areas of Reynolds's performance that needed improvement (Id.). Ms. Jones created this list on April 26, 2004 (Id.).

On May 5, 2004, a surveyor from the State of Ohio was at the facility conducting a survey (doc. 22). Reynolds engaged in a conversation with the surveyor and he gave her his business card

(Id.).  Carolyn Puckett ("Puckett"), an Extendicare employee, observed the conversation between the surveyor and Reynolds and asked another employee, Valorie Day ("Day"), why Reynolds needed the surveyor's business card (Id.).  Puckett then proceeded to make a lewd gesture with her hand, simulating masturbation, in the direction of Reynolds (Id.).  Day and Reynolds observed Puckett's gesture (Id.).

According to the company handbook, a supervisor is required to report any instance of offensive behavior (Id.).  The company handbook also stated that the company will not tolerate any retaliation against an employee who reports offensive behavior (Id.).  Reynolds reported Puckett's conduct to Fehn the next day (Id.).  According to Reynolds, Fehn reacted as if there was nothing wrong with Puckett's behavior and showed no intention of investigating the incident (Id.).  It was not until Day also reported the incident that Fehn took it seriously (Id.).  According to Defendants, Puckett did not work for Fehn, therefore Fehn could not handle the matter, but she did report it to Extendicare's regional management (doc. 17).

Approximately a week later, Reynolds, Day, and Fehn participated in a conference call with Jason Hohlfelder, the Regional Director of Operations (doc. 22).  Hohlfelder apologized to Reynolds and Day for the incident and assured them that Puckett would be disciplined (docs. 17, 22).  According to Defendants,

4

Hohlfelder explained to Reynolds that he could not discuss Puckett's discipline with her (doc. 17). According to Plaintiff, Hohlfelder assured Reynolds that Puckett would be disciplined and would no longer return to Arbors (doc. 22). However, Puckett did return to Arbors and worked there until she left the company a month later (<u>Id</u>.). Hohlfelder also promised Reynolds that she would not be subject to any retaliation as a result of reporting this incident (<u>Id</u>.).

On May 12, 2004, Fehn and Ms. Jones met with Reynolds to present her with the thirty-day plan they had developed in order to improve Reynolds's insufficient performance (docs. 17, 22). The improvement plan included goals for Reynolds (<u>Id</u>.). It also cautioned that failure to meet the goals would result in disciplinary action, including termination (<u>Id</u>.).

Reynolds claims that the goals, such as defining her leadership role, following policies in a non-judgmental manner, and avoiding the appearance of negativity, were vague and subjective (doc. 22). She also felt as if the improvement plan was retaliation for reporting the incident with Puckett, as it was presented to her only two days after the conference call with Hohlfelder (<u>Id</u>.). According to Reynolds, she made every effort to comply with the plan (<u>Id</u>.). As directed, she developed a self-improvement plan, which presented her ideas on how to meet the goals set for her, yet this plan was twice rejected by Ms. Jones

and Fehr as insufficient (Id.).  On June 4, 2004, Plaintiff presented a third self-improvement plan and Ms. Jones and Fehr told her that she was improving (Id.).  However, in the same meeting, Plaintiff states, Ms. Jones informed Reynolds that they could not work together and that Reynolds would be terminated (Id.).  When Plaintiff asked if she could finish out the thirty-day plan, Fehn said that she could not (Id.).

Defendants tell a different version of the events following the implementation of the thirty-day plan (doc. 17). According to Defendants, Reynolds was not making any progress toward the goals Ms. Jones and Fehn set for her (Id.).  As a result, Ms. Jones and Fehn had another meeting with Reynolds on May 28, 2004, and provided her with a detailed statement of the specific problems that she needed to address (Id.).  At this meeting, they asked Reynolds to develop her own plan for meeting these goals, and they met again on June 1, 2004 to discuss the plan (Id.).  They found the plan developed by Ms. Reynolds insufficient and Ms. Jones asked her to revise the plan (Id.).  When the group met on June 4, 2004, Reynolds' self-improvement plan was still insufficient because it shifted too much responsibility away from Reynolds (Id.).  During the meeting, Reynolds asked Fehn if she would be able to meet the goals of the thirty-day plan in the allotted time (Id.).  Fehn responded by saying that because so much time had passed and Reynolds had made no improvement, she did not

6

think Reynolds would be able to achieve the goals in the allotted time (Id.). At this point, Defendants claim that Reynolds said something to the effect of "well, why wait out the week then" (Id.). Fehn agreed to pay Plaintiff for her accrued vacation and personal time, and Reynolds gathered her things and left (Id.).

B. Plaintiff Linda Heine

Plaintiff Linda Heine ("Heine") began working for Defendants on February 6, 2003 (doc. 16). Like Reynolds, Heine received an employee handbook, as well as many other documents describing company policy (Id.). She also signed a document acknowledging that she had read the handbook (Id.). The handbook and other documents contained provisions indicating that she was an at-will employee and that nothing contained in the employee handbook or any other document was to be construed as an employment contract (Id.). Heine's job was to provide care to patients in two particular units at the Arbors facility, as well as supervising other staff in those units (Id.).

Heine received an evaluation approximately three months after she began her employment with Defendants (doc. 21). She received a high score on her evaluation (Id.). However, according to Defendants, the evaluation did mention that she needed to avoid gossiping with co-workers and complaining in public areas (doc. 16). On one occasion, Heine was disciplined for giving a fellow employee prescription medication (Id.). Defendants contend that

7

Fehn and Ms. Jones continued to have problems with Heine's attitude and her gossiping (Id.).

In April 2004, management put Heine on a thirty-day improvement plan due to what management claims were continued problems with Heine's attitude (Id.).  Defendants state the plan sought to improve her overall negative attitude, which included negative discussions during breaks, contempt toward co-workers, and negative comments about fellow employees (Id.).  Heine successfully completed the thirty-day improvement plan, but management made her aware that she would still be subject to discipline if she had additional problems with her attitude (Id.).

On June 18, 2004, a nurse aide, Debbie Martin ("Martin"), who worked in Heine's unit told Heine that a male nurse, John Jones, had touched her buttocks and made a gesture suggestive of oral sex toward her (doc. 21).  John Jones is the husband of Bonnie Jones, the Director of Nursing (Id.).  Martin was afraid that she might be fired if she reported this incident because of Mr. Jones' relationship to her supervisor, so she asked that Heine not make a formal report of the incident (Id.).  However, as a manager, company policy required Heine to report offensive behavior (Id.).  The company handbook also indicates that no retaliation will be tolerated against an employee who files a report (Id.).

Three days later, Heine reported the incident to Bonnie Jones, the Director of Nursing (Id.).  Jennifer Fehn, the facility

administrator was on vacation, so reporting the incident to Ms. Jones was the only option (Id.). Given her obvious conflict, Ms. Jones passed the report on to the Assistant Director of Nursing, Rodney Bradford (Id.). Ms. Jones also reported the incident to Hohlfelder, the Regional Director of Operations (Id.). According to Heine, when she reported the incident to Ms. Jones, Ms. Jones accused Heine of lying about the incident and made other threatening remarks (Id.).

Heine contends that the investigation of the incident was insufficient (Id.). A regional nurse consultant, Tony Ooten, spoke with Heine and Ms. Martin about the incident (Id.). Mr. Ooten reported that Ms. Martin said that the incident was not a big deal and that it was not a problem (Id.). The Human Resources Department further questioned Martin, and she again indicated that she did not want the matter pursued (Id.). Heine claims that the Human Resources Department intimidated Ms. Martin into not pursuing her claim (Id.). When Fehn returned from vacation, she also investigated the matter and learned that Mr. Jones and Ms. Jones were very upset about the matter and considered it a personal attack (Id.). After the investigation was concluded, someone in the management team determined that Heine's allegations were unfounded (Id.).

Plaintiff contends that prior to this incident, she had a good working relationship with Fehn and Ms. Jones, but that ended

9

after she filed her report (Id.).  Heine claims that Fehn said whoever started the story about Mr. Jones was an evil person and a liar, and told Heine that people no longer liked Heine at work (Id.).  Heine also claims that Ms. Jones was hostile toward her on many occasions (Id.).

On or about August 16, 2004, Heine was on a break outside of the Arbors facility and she had a conversation with a new employee, Randall Gordon ("Gordon") (docs. 16, 21).  During this conversation, Heine told Gordon that the management did not like her because of an incident between a nurse aide and a nurse who was related to the Director of Nursing (Id.).  Heine did not use any names or give any details of the incident (Id.).  According to Defendants, during the conversation she also made negative comments about males in general (doc. 16).  Gordon reported this conversation to his supervisor shortly after it ended because he felt that Heine's comments were inappropriate (Id.).  Fehn then called Heine into her office to confront her about the conversation she had with Gordon (Id.).  After her meeting with Fehn, Heine left work for the day (Id.).

On August 19, 2004, Heine called Defendants' corporate complaint hotline and told a representative that her supervisors were retaliating against her for reporting the incident involving Mr. Jones (docs. 16, 21).  She then followed up on her phone conversation with a written complaint (Id.).  Plaintiff claims that

10

the corporate representative assured her that her complaint would be investigated (doc. 21).

On August 23, 2004, Fehn called Heine into her office and informed her that she was being terminated, effective immediately (doc. 16).   Fehn cited the employee handbook, which lists disclosure or confidential information as a Class III offense (Id.).  According to Defendants, the company handbook imposed an obligation on Heine to keep employee matters confidential (Id.). Failure to do so constitutes a Class III offense (Id.).   For a Class III offense, immediate termination is warranted (Id.).  Heine contends that while the handbook may allow termination for such an offense, other employees had disclosed confidential information but were not terminated (doc. 21).   Defendants claim that Fehn took into account Heine's previous problems with gossiping and making negative comments about co-workers in making the decision to terminate Heine (Id.).

Plaintiffs filed their consolidated complaint in Clermont County Ohio Court of Common Pleas on April 26, 2005 (doc. 1).  On May 24, 2005, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 (Id.).   This Court's jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Defendants filed their motions for summary judgment on May 3, 2006 (docs. 16, 17).   This matter is now ripe for the Court's consideration.

11

## II.   Summary Judgment

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).   In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.   First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the

14

motion.  <u>See</u> <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  <u>See</u> <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

### III. Plaintiffs' Claims for Retaliation Under Ohio Rev. Code § 4112.99

Plaintiffs both claim that they are victims of retaliation.  In order to establish a <u>prima</u> <u>facie</u> case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) the defendant knew she engaged in protected activity; (3) the plaintiff subsequently suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the employment action.  <u>Strouss v. Michigan Dept. of Corr.</u>, 250 F.3d 336, 342 (6th Cir. 2001).  Once the plaintiff establishes a <u>prima</u> <u>facie</u> case, the burden then shifts to the defendant to show that the reason for taking the adverse employment action was not discriminatory.  <u>Virts v. Consol. Frieghtways Corp.</u>, 285 F.3d 508, 521 (6th Cir. 2002).  Once the defendant establishes a legitimate, non-discriminatory reason for taking the action, the burden then shifts back to the plaintiff to show that the defendant's reason is pretextual.  <u>Id</u>.  In order to

show pretext, the plaintiff must show that (1) the reason has no basis in fact; (2) the reason was not the actual reason; or (3) the reason could not explain the defendant's action. Id.

A. Plaintiff Kelley Reynolds

Defendants concede that Reynolds has met the first three requirements of a prima facie case for retaliation (doc. 22). Reynolds argues that there was a causal connection between her report of offensive behavior and her termination (Id.). In order to establish this causal connection, Reynolds must show that the adverse action would not have been taken had she not engaged in the protected activity of reporting the offensive behavior. Allen v. Michigan Dept. of Corr., 165 F.3d 403, 413 (6th Cir. 1999).

Reynolds cannot make the connection between her termination and the report of offensive behavior she filed. Defendants offered evidence that Reynolds' supervisors had decided to put her on a thirty-day improvement plan approximately a week before the offensive behavior took place (doc. 17). Plaintiff did not offer evidence to rebut this assertion (doc. 22). Plaintiff sought to draw a connection between her termination and the report of offensive behavior by showing that her supervisors presented her with the thirty-day plan only two days after Hohlfelder addressed her report (Id.). That fact alone is not enough to suggest that Plaintiff would not have been fired had she not reported the offensive behavior.

16

Even if Reynolds could establish a prima facie case, she could not show that Defendants' legitimate, non-discriminatory reason for terminating her was pretext.  Reynolds contends that she only received one evaluation and that it was unusual for an employee to be fired with only one evaluation on record and no disciplinary record (Id.).  However, Defendants put forth a record of Reynolds' consistently below-average performance and lack of interest in improvement (doc. 17).  Reynolds did not offer any significant evidence to the contrary (doc. 22).  Therefore, the Court finds there is no genuine issue of material fact as to Reynolds' claim of retaliation, and Defendants are entitled to a judgment as a matter of law.

B. Plaintiff Linda Heine

Defendants also concede that Heine meets the first three requirements of establishing a prima facie case (doc. 21).  Heine argues that she was terminated as a result of the report of offensive behavior she filed against Mr. Jones (Id.).  Heine also contends that her supervisors were hostile toward her after she filed her complaint (Id.).  An inference can be drawn that Heine's termination was related to the report she filed against Mr. Jones.

However, Heine fails to show that Defendants' legitimate non-discriminatory reason for firing her was pretext.  In her attempt to show that Defendants' reason was pretext, Heine focused on her conversation with Gordon, during which she discussed the

17

events that led to her report of offensive conduct against Mr. Jones, albeit in very general terms (<u>Id</u>.).  She claims that the conversation was not enough to warrant her termination, and that retribution for her complaint was the real reason (<u>Id</u>.).  Heine fails to address the numerous times prior to her complaint of offensive behavior in which her supervisors admonished her for making negative comments about co-workers and her overall negative attitude (<u>Id</u>.).  At one point, Heine was placed on a thirty-day improvement plan, which she completed, but was told that if further issues arose regarding her attitude, she would be subject to discipline.  (doc. 16).  The discussion Heine had with Gordon that resulted in her termination was the same sort of behavior that the record shows her supervisors had sought to correct on many occasions.

Plaintiff fails to show that Defendants' legitimate non-discriminatory reasons for terminating her, her repeated attitude problems and negative comments, were pretext.  She cannot establish that the reasons were not based on fact, she cannot demonstrate that it was not the real reason, and she cannot show that the reasons fail to explain the decision.  Therefore, there is no genuine issue of material fact as to Defendants' proffered legitimate reasons for Heine's discharge, and Defendants are entitled to judgment as a matter of law.

18

## IV.  Plaintiffs' Claims for Promissory Estoppel

Under Ohio law, promissory estoppel is applicable to at-will employment situations if the employer makes a promise and the employee reasonably relies on that promise to her detriment.  Mers v. Dispatch Printing Co., 19 Ohio St.3d 100, 105, 483 N.E.2d 150, 155 (Ohio 1985).  "[Plaintiff] must demonstrate detrimental reliance on specific promises of job security to create an exception to the employment-at-will doctrine."  Rigby v. Fallsway Equip. Co., Inc., 150 Ohio App.3d 155, 162, 779 N.E.2d 1056, 1061-1062 (Ohio App. 9 Dist. 2002).

### A. Plaintiff Kelley Reynolds

Reynolds argues that Defendants promised that she would not be retaliated against if she reported an incident of offensive behavior by a fellow employee (doc. 22).  Plaintiff claims that she relied on this promise to her detriment because she reported Puckett's offensive behavior (Id.).  However, this Court finds that there was no retaliation against Reynolds.  The unrebutted record shows that Defendants terminated Reynolds for poor performance, not in retaliation for engaging in protected activity.  Reynolds has therefore failed to establish the existence of any detrimental reliance.

### B. Plaintiff Linda Heine

Heine also argues that Defendants promised that she would not be retaliated against if she reported an incident of offensive

19

behavior (doc. 21).  And like Reynolds, Heine fails to show that she detrimentally relied on that promise.  Since the Court finds that Defendants had a legitimate, non-retaliatory reason for terminating Heine, she cannot establish that she relied on any promise to her detriment.

**V.   Plaintiffs' Claims for Violation of Public Policy**

Plaintiffs claim that Defendants terminated them in violation of Ohio Public Policy (docs. 16, 17).  This Court has recently held that a plaintiff cannot maintain a claim for violation of public policy if a statutory remedy already exists. Feichtner v. Roman Catholic Archdiocese of Cincinnati, 2006 U.S. Dist. LEXIS 12834 (S.D. Ohio, March 7, 2006).  Plaintiffs have an adequate remedy under Ohio Rev. Code § 4112.99.  Therefore, the Court must grant Defendants' Motions for Summary Judgment (docs. 16, 17), on the public policy claims.

**VI.  Plaintiffs' Claims for Breach of Contract**

Plaintiffs made a breach of contract claim against Defendants based on language in the employee handbook regarding the offensive behavior policy (doc. 16, 17).  Plaintiffs contend that the language in the handbook altered the at-will employment relationship such that Defendants were contractually bound to not retaliate against Plaintiffs (Id.).  However, the employee handbook contains a disclaimer stating that nothing on the handbook is to be construed to create an employment contract (Id.).  Under Ohio law,

"absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook." <u>Wing v. Anchor Media, Ltd. of Texas</u>, 59 Ohio St.3d 108, 110 (1991). This case presents no facts showing fraud in the inducement, therefore the language contained in Defendants' employee handbook under offensive behavior did not create a contractual relationship between Plaintiffs and Defendants. There is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law on Plaintiffs' claims for breach of contract.

## VII. Conclusion

For the reasons indicated herein, the Court does not find Plaintiffs' causes of action viable. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment With Regard to the Complaint Filed by Plaintiff Kelley Reynolds (doc. 17), GRANTS Defendants' Motion for Summary Judgment With Regard to the Complaint Filed by Plaintiff Linda Heine (doc. 16), and DISMISSES this case from the Court's docket.

SO ORDERED.


Dated: August 1, 2006          /s/ S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge


21