UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KELLEY REYNOLDS, et al., | : | NO. 1:05-CV-00359 |
| Plaintiffs, | : | |
| vs. | : | |
| | : | **OPINION AND ORDER** |
| EXTENDICARE HEALTH SERVICES, INC., et al., | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiffs' Motion to Reconsider Opinion and Order Granting Defendants' Motions for Summary Judgment (doc. 40), and Defendants' Response in Opposition (doc. 42). The Court held a hearing on this matter on October 25, 2006.

Plaintiffs' counsel's presentation impressed the Court and caused the Court a good deal of pause. The Court recognizes the difficult posture of counsel in arguing to the Court that it erred in its previous decision. Plaintiffs' counsel in this instance was incredibly well-prepared and skillfully represented his clients. That said, the Court has carefully reviewed its prior reasoning, the facts of this case, and the case authority Plaintiffs' Counsel cited at the October 25, 2006 hearing, and concludes that its previous decision should stand unchanged. For the reasons indicated herein, therefore, the Court DENIES Plaintiffs' Motion to Reconsider Opinion and Order Granting

Defendants' Motions for Summary Judgment.

## I. Background

Plaintiffs Kelley Reynolds and Linda Heine sued Defendants under the theory that Defendants terminated their employment in retaliation for Plaintiffs' legally protected behavior of reporting offensive behavior. On August 2, 2006, the Court entered an opinion granting Defendants summary judgment on Plaintiffs' retaliation and related claims. The Court found that neither Plaintiff had carried her burden to show that Defendants' proffered legitimate non-retaliatory reasons, the records of Plaintiffs' alleged performance problems, were pretext.

Plaintiffs' present motion challenges the Court's Order dismissing their claims, arguing the Court improperly applied the summary judgment standard and made every inference in favor of Defendants. Moreover, at the October 25, 2006 hearing, Plaintiffs argued that under Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000), the Court erred by accepting the "unverifiable interested statement of Defendants" that they intended to put Plaintiff Reynolds on a performance improvement plan before she had engaged in protected activity. Defendants responded at the hearing that there are no material facts in dispute in the case as to Plaintiffs' performance problems, and that Plaintiffs incorrectly interpret and apply Reeves.

The cases of Plaintiffs are each distinct from one

another, and though they involve the same Defendant companies, they involve different fact patterns, people, and timeframes. As such, the Court will review the arguments pertaining to each case separately.

## II. The Case of Kelley Reynolds

Reynolds's Complaint is grounded in events of May 5, 2004, when she reported the lewd gesture of another employee, Carolyn Puckett, to her supervisor, the facility's administrator, Jennifer Fehn. According to Reynolds, Fehn did not take Reynolds's report of the lewd gesture seriously until another employee, Valorie Day, also reported the incident.

Fehn subsequently reported the incident, and about a week later, the Regional Director of Operations, Jason Hohlfelder, conducted a conference call with Reynolds, Fehn, and Day, to apologize and assure that Puckett would be disciplined. Two days after Reynolds had made her complaint about Puckett's behavior, the Director of Nursing, Ms. Bonnie Jones, presented Reynolds with a thirty-day performance improvement plan ("PIP").

Plaintiff Reynolds argues that her termination in early June 2004 came in retaliation for her having reported Puckett's lewd gesture. Reynolds argues her performance was acceptable, and that the timing of the PIP, only two days after she reported the offensive behavior, shows a causal link between her report and the action taken against her.

In its earlier decision, the Court found evidence in the record to show that Reynolds had performance problems prior to May 2004, and that Defendants actually drafted the PIP on April 26, 2004, well in advance of the incident with Puckett. The Court concluded that Defendants had a legitimate non-discriminatory reason for terminating Reynolds, her poor performance, and that Reynolds failed to establish that such reason was pretext.

In her Motion to Reconsider, Reynolds challenged the Court's factual conclusions (1) that Defendants decided to place Reynolds on the PIP before she made the complaint, (2) that Reynolds had a record of below average work and a lack of interest in improvement, and (3) that the real reason for her termination was for not meeting the goals of her PIP (doc. 40). Reynolds argues that the claim that the PIP was prepared in advance of her Complaint was "suspect in absence of any explanation for the significant delay in presenting the PIP" and suspect in the timing of its presentation after Reynolds's legally protected behavior of complaining about offensive behavior (Id.). At the hearing, Counsel suggested that the Court erred in accepting Defendants' testimony about when the PIP was prepared, arguing that the Court should disregard "unverifiable interested statements" that a jury is not required to believe.

Reynolds next argues that the record is "devoid of any objective evidence that would support the conclusion that prior to

4

her Complaint," her performance was anything but acceptable (Id.). Reynolds argues the only evidence of the performance issue is the "post hoc, self-serving testimony of Defendants' decision makers that is unsupported by any documentation and squarely conflicts with Ms. Reynolds' testimony" (Id.). Finally, Reynolds argues that the Court's conclusion that she was fired for performance issues disregards material facts that (1) her supervisor Bonnie Jones told her she was improving, but that nonetheless she was being fired, (2) that Hohlefelder, who investigated her complaint, testified Reynolds was terminated because she had become a "disruption," and (3) she was fired one week before the thirty-day PIP expired, a situation Hohlefelder described as "unusual" (Id.).

Defendants argue the Court did not err in granting them summary judgment because (1) the undisputed evidence demonstrates they decided to place Reynolds on a thirty-day plan before her protected conduct, (2) the undisputed evidence demonstrates she suffered from performance problems throughout her employment, and (3) there is no evidence of causal connection or pretext (doc. 42). The Court finds Defendants' position well taken.

   **A. The Undisputed Evidence Demonstrates Defendants Decided to Place Reynolds on a Thirty-day PIP Before Her Protected Conduct**

Defendants proffered undisputed testimony of Bonnie Jones, the Director of Nursing, that she drafted Reynolds's performance improvement plan ("PIP") on April 26, 2004, prior to

5

Reynold's report of Puckett's behavior, in early May 2004. The document is dated April 26, 2004 on its face.

Plaintiffs argue they are entitled to an inference that the evidence proffered by Defendants is suspect, because a jury could find that it was convenient for Defendants to create the PIP after Reynolds reported Puckett's behavior. However, Plaintiffs offer no evidence to impeach Jones's testimony or the date on the document itself. Plaintiffs request that the Court reject such testimony for purposes of summary judgment based on the fact that it is proffered by an "interested" witness.

In <u>Almond v. ABB Industrial Systems, Inc.</u>, 56 Fed. Appx. 672, 675 (6th Cir. 2003), the Court confronted a similar argument. In <u>Almond</u>, Plaintiffs argued that "in considering a motion for summary judgment against them, the court must entirely ignore all testimony by witnesses associated with the defendant," quoting <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 151 (2000), for the proposition that "[t]he Court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, <u>at least</u> to the extent that the evidence comes from disinterested witnesses.'" The Sixth Circuit rejected Plaintiff's interpretation, finding that it "over-reads <u>Reeves</u> and leads to absurd consequences." <u>Almond</u>, 56 Fed. Appx. at 675. The Appeals Court opined, "If plaintiffs were correct, there could be no summary judgment for the defendant

after the plaintiff makes a prima facie case as the defendant's proferred non-discriminatory reason by necessity has to be provided by defendant's witnesses." Id. The Court continued,

> the summary judgment standard does not require the exclusion of all interested testimony....[i]n particular, 'the testimony of an employee of the [movant] must be taken as true when it disclosed no lack of candor, the witness was not impeached, his credibility was not questioned, and the accuracy of his testimony was not controverted by evidence, although if it were inaccurate it readily could have been shown to be so.

Id., quoting 9A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2527 at 287 n.9 (2d ed. 1995)(citing Chesapeake & Ohio R.R. v. Martin, 283 U.S. 209, 216 (1931)).

Here, the Court is not compelled to reject the evidence in the record of Bonnie Jones's testimony about when she drafted the PIP, or to infer that the date on the document is false. Where Plaintiff proffers no impeaching testimony, the Court cannot second-guess, but must accept Defendants' evidence as true. The temporal proximity of the issuance of the PIP to Reynolds's complaint is not enough to support an inference of pretext. Randolph v. Ohio Department of Youth Services, 453 F.3d 724, 737 (6th Cir. 2006).[1] Plaintiff further overstates the "significant

---

[1] Plaintiffs' Counsel cited this case at the October 25, 2006 hearing, conceding that temporal proximity is not enough, but arguing that where there is proximity coupled with rumors and investigations, summary judgment is inappropriate on the question of pretext. However, Counsel did not proffer evidence similar to that present in the Randolph case, and ultimately failed to demonstrate how any facts in this case show Defendants' proffered reason has no basis in fact, was not the actual reason for her

7

delay" of some seventeen days between the drafting of the PIP on April 26 and its presentation on May 12, 2004. At the hearing, Defendant argued that the health care setting simply does not always allow for faster action.

In summary, having reviewed the question anew, the Court concludes there is no genuine dispute as to the material fact that Bonnie Jones drafted the PIP on April 26, 2004, prior to Reynolds's complaint about Puckett's behavior.

### B. The Undisputed Evidence Demonstrates Reynolds Had Performance Problems Throughout Her Employment

Despite Plaintiff Reynolds's claim to the contrary, Defendants submitted substantial evidence of Reynolds's ongoing performance issues. Among such evidence was Ms. Reynolds's first evaluation, which she perceived as negative, and which included numerous issues needing improvement; the fact that her supervisors had to coach her to avoid showing favoritism, about problems with chart audits, and performing her job duties; the fact that in January 2004, Reynolds was asked to develop a list of performance goals, and the fact that Bonnie Jones noticed similar performance problems when she became Director of Nursing in March 2004. Testimony from Jones and Fehn indicates they discussed problems with Reynolds's performance in April 2004, and decided to draft up

---

termination, or that it could not explain Defendants' action. Virts v. Consol. Freightways Corp. 285 F.3d 508, 521 (6th Cir. 2002).

the PIP, which they intended to serve as a list of goals Reynolds had to meet in order to retain her employment. Jones and Fehn offered sworn affidavits that after they discussed the PIP with Reynolds, she failed to make progress toward the goals, and continued to have ongoing performance problems.

Reynolds claims that her own testimony squarely conflicts with the testimony of Jones and Fehn, but then only offers portions of deposition transcripts that are taken out of context or mischaracterized. There is no genuine dispute that Jones and Fehn were unsatisfied with Reynolds's performance during the course of Reynolds's employment.

**C. There is No Evidence of Causal Connection or Pretext**

The Court found in its prior Order that Reynolds could not make the connection between the report of offensive behavior and her termination, because in order to do so, she must show that the adverse action would not have been taken had she not engaged in the protected activity (doc. 37 <u>citing</u> <u>Allen v. Michigan Dept. Of Corr.</u>, 165 F.3d 403, 413 (6th Cir. 1999)). The Court further found that even if Reynolds could establish a <u>prima</u> <u>facie</u> case for retaliation, she could not show that Defendants' reason for terminating her was pretext.

Plaintiff argues that a reasonable jury could conclude that Defendants' claim that she had performance issues is pretext because (1) on the day she was fired Jones told her that she was

9

improving, but would be fired because Jones could not work for her any longer, (2) Hohlefelder, who investigated her complaint, testified Reynolds was terminated because she had become a "disruption," and (3) she was fired one week before the thirty-day PIP expired, a situation Hohlefelder described as "unusual" (doc. 40). Defendant argues that had the Court viewed the evidence most favorably to Plaintiff and drew all reasonable inferences in her favor, it would have concluded that a reasonable jury could find in Reynolds's favor. The Court disagrees.

As for Jones's statement that Reynolds was improving, the deposition transcripts show that Jones was referring to Reynolds's draft of an action plan consistent with the requirements of the PIP was improving—-but Reynolds still had not completed her draft. Moreover, record evidence shows Reynolds had not demonstrated any improvement in her job performance. Clearly, Reynolds takes Jones's statement out of context, and no reasonable jury could find such statement supportive of a finding that Defendants' proffered legitimate non-retaliatory reason for her termination is untrue.

Next, Mr. Hohlefelder's testimony that he understood that Reynolds had become a disruption, and that this was part of the reason she was let go, does not support Plaintiff's theory of pretext. First, as Defendants indicate in their Response, Mr. Hohlefelder was uninvolved in the decision to terminate Reynolds. Second, Hohlefelder's complete testimony shows he understood that

Reynolds "failed to fulfill the job duties of assistant director of nursing" (doc. 42). And third, Mr. Hohlefelder's testimony does not indicate how or why Reynolds had become a disruption. Interpreting more from such testimony requires speculation, and not mere reasonable inferences. Accordingly, the Court concludes this statement does not serve to show that Defendants' proffered reason for Reynolds's dismissal had no basis in fact, was not the actual reason for her termination, or that it could not explain Defendants' action. Virts v. Consol. Freightways Corp. 285 F.3d 508, 521 (6th Cir. 2002).

Finally, the fact that Reynolds was fired one week before the thirty-day PIP expired, a situation that Hohlefelder described as "unusual," does not throw into question Defendants' proffered explanation for her dismissal. The evidence shows Reynolds was working under a PIP because her performance needed improvement, and that she was not progressing. Reynolds was alerted that failure to meet her employer's expectations could result in disciplinary action, including termination (doc. 11, Exhibit NN). The PIP had specific goals, including that she should meet with Ms. Jones to discuss her progress, something that she did not do (doc. 13, Exhibit UU). Moreover, Reynolds continued to persist in spending most of her time in one unit, showing favoritism to one unit manager, rather than spreading her time over all units. (Id.). The unrebutted documentary evidence shows that Reynolds "showed

continued failure to act as a leader showing loyalty and ensuring team cohesion" (Id.). Under such circumstances, the dismissal of an employee before the end of a probationary period serves as no indication of pretext. "Courts will not hold an employee legally liable for discharging an employee when the evidence clearly shows that the employee was not performing her job satisfactorily. In other words, Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies [and] unsatisfactory performance." James v. Runyon, 843 F. Supp. 816, 826 (N.D.N.Y. 1994)(internal citations omitted).

**III. The Case of Linda Heine**

Linda Heine served as a Unit Manager for Defendants, starting on February 6, 2003. The record shows that upon her first evaluation, within her first three months, she was advised to avoid gossiping with co-workers and complaining in public areas. The record further shows that Heine received discipline for giving a fellow employee prescription medication.

On the same date that Bonnie Jones prepared Kelly Reynolds's thirty-day improvement plan, April 26, 2004, she also prepared a plan for Heine. On its face, the plan states that Heine had difficulty with negativity that interfered "with the success of building a cohesive team" in the areas of meetings, interactions with subordinate staff, colleagues, and physicians (doc. 12,

12

Exhibit P). The plan required Heine to participate in meetings without showing anger, disdain or contempt for co-workers, to show respect in all physician interactions, and to refrain from making negative comments about colleagues (Id.). Heine successfully completed her thirty day PIP, but was advised that she would still be subject to discipline if additional attitude problems arose.

These facts only provide the background for the event that gave rise to Heine's Complaint. Heine claims that on June 18, 2004, a subordinate nurse aide reported to her that she had been sexually harassed by John Jones, a male nurse. John Jones is the spouse of Bonnie Jones, Heine's boss, and the Director of Nursing. Heine's protected behavior, for which she alleges retaliation, is the reporting of John Jones's alleged sexual harassment of another employee.

The Court is sensitive to the fact that Heine brought the Complaint to her superior, who was married to the alleged offender. However, the facts of the case show that Bonnie Jones recused herself from handling the situation, and passed the report on to the Assistant Director of Nursing, as well as reporting the alleged incident to Mr. Hohlfelder, the Regional Director of Operations. These actions eliminated any conflict of interest. Ultimately, the investigation concluded that Heine's allegations were unfounded and the matter was dropped. Heine contends Defendants conducted a sham investigation, and that subsequent to the whole affair, Bonnie

Jones and Jennifer Fehn became hostile to her. Heine claims that her ultimate termination, about two months later, on August 23, 2004, resulted from her report about John Jones's alleged behavior.

In its prior Order, the Court found that Heine established her prima facie case, and that an inference could be drawn that her termination was related to the report she filed about Mr. Jones (doc. 37). However, the Court found that Heine failed to show that Defendants' proffered non-discriminatory reason for firing her was pretext (Id.). Defendants' proffered reasons: Heine divulged confidential information to a new employee, and her track record of problems with gossip and a negative attitude.

It is undisputed that in mid-August 2004, Heine told a new employee that management did not like her because of "complaints of sexual harassment made toward the Director of Nursing (sic) husband" (doc. 16). The new employee felt Heine's discussion with him was inappropriate, and reported it to his superiors. Fehn subsequently terminated Heine.

Plaintiff now requests the Court reconsider its conclusion that Defendants were justified in terminating her, arguing the Court ignored four key facts that would permit a jury to find in her favor. First, Heine argues that the record shows she had previously been disciplined only once, and never for her attitude or gossiping (doc. 40). Second, Heine argues that before her report about John Jones, she had a good working relationship

14

with her supervisors, while afterwards, they became hostile (Id.). Third, she never mentioned John Jones's name when she allegedly divulged confidential information, and other employees who divulged confidential information were given less or no discipline (Id.). Finally, Heine argues her termination came just three days after she registered a formal complaint for retaliation with Defendants' corporate offices (Id.).

Defendants respond that Heine's "key fact" that she was disciplined once and never for gossiping, in no way indicates that she did not have a problem with gossiping (doc. 42). Heine's first performance evaluation, dated June 19, 2003, stated, "Refrain from gossiping," and Heine admitted in her deposition that her supervisors let her know she had attitude and gossip issues (Id.). Fatal to Heine's position is the fact that her April 26, 2004 PIP addresses "negative discussions on smoke breaks," precisely the sort of behavior for which Defendant ultimately terminated her. The Court does not find well-taken Heine's argument that the record does not adequately reflect that she had issues with gossiping at work. It does. Defendants' efforts to stop such behavior do not amount to pretext.

The Court has similarly reviewed Heine's argument that her superiors became hostile to her, excluded her from meetings, and that Fehn called her "evil," and a "liar." The Court finds Defendants' argument well-taken that Heine has not proffered

evidence that her "exclusion" at a July 1, 2004 meeting was anything other than a misunderstanding, and that the alleged July 28, 2004 meeting was anything she needed to attend. As for the statements allegedly made by Fehn, the Court agrees that even if Fehn made such statements, they do not necessarily indicate the reasons for Heine's termination were false.

Heine's third "key fact" is that she never mentioned John Jones by name, and other employees received less discipline for the same offense. The Court finds Defendants' position well-taken that Heine's statement about John Jones "the Director of Nursing husband" (sic) was sufficiently detailed to identify him. In light of Heine's record of issues with gossip, it was not unreasonable in this instance for Defendants to have meted out comparatively more severe discipline.

Heine's final argument is that her termination came in temporal proximity to her formal complaint. As the Court noted above, temporal proximity is not enough. <u>Randolph v. Ohio Department of Youth Services</u>, 453 F.3d 724, 737 (6th Cir. 2006). In this case, moreover, Defendants proffer facts that the decision to terminate Heine came down on August 16, 2004. Defendants were unable to inform Heine because she left work early that day, and then called off work for two days. During her absence, Heine called the corporate hotline. These facts do not show Defendants' proffered reasons for terminating Heine had no basis in fact, were

16

not the actual reasons for her termination, or that they could not explain Defendants' action.

## IV. Conclusion

The Court is sensitive to the awkward position of Plaintiffs' counsel in attempting to convince it that it erred in its previous decision. The Court is willing to reconsider its reasoning when it is convinced the law and the facts require it to. In this instance, the law and the facts militate against a reversal.

For the reasons indicated herein, the record in this matter does not demonstrate that Defendants' proffered legitimate non-retaliatory reasons for terminating the respective Plaintiffs are pretextual. As such, the Court finds Defendants did not retaliate against Plaintiffs, nor breach any promise to refrain from retaliation for protected behavior. Accordingly, the Court DENIES Plaintiffs' Motion to Reconsider Opinion and Order Granting Defendants' Motions for Summary Judgment (doc. 40).

SO ORDERED.

Dated: November 1, 2006       /s/ S. Arthur Spiegel

                              S. Arthur Spiegel
                              United States Senior District Judge